QUINCE, C.J.,
specially concurring.
I concur in the majority opinion because the police interrogation technique used in this case was a deliberate attempt to get an admission/confession before the defendant exercised his rights. The Seibert-type technique used in this case is one that we have been seeing with more frequency. I believe it is a technique that may put in jeopardy prosecutions that might otherwise not be reversible on appeal. In Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (plurality opinion), the United States Supreme Court explained the significance of Miranda[30] warnings. The Court indicated that a tactic that is designed “to get a confession the suspect would not make if he understood his rights,” Seibert, 542 U.S. at 613, 124 S.Ct. 2601, was unconstitutional because such tactics thwart the purpose for which Miranda was designed — to reduce the risk of coerced confessions. See id. at 611-12, 124 S.Ct. 2601.
Recently, in McWatters v. State, 36 So.3d 613 (Fla.2010), we addressed another situation where the police used a similar albeit different kind of technique to attempt to undermine the effectiveness of the Miranda warnings. In McWatters, the police read the suspect his Miranda rights in conjunction with questioning for an offense unrelated to the murder and sexual battery case. McWatters was not questioned after the warnings were given but was instead taken to the police station and placed in a room which contained evidence relating to the murder case. He was later told that he had been taken to the wrong room; he was then paraded through the police station past witnesses related to the murder case. Although we found that the defendant knowingly waived his rights, it was of concern that the police used this technique, especially given the fact that the officer admitted that the ruse was being used to keep McWatters from invoking his rights.
In this case, the officer likewise testified that he knew the interview on January 9 would be his last opportunity to get an uncounselled statement from the defendant. Therefore, the officer boxed the defendant into a small interrogation room with other officers coming in and out, he would not allow Ross to leave, and all the while the officer was telling Ross he was not under arrest. Yet at the same time the officer was continually confronting Ross with evidence against him. It is *436 obvious that under the circumstances the defendant was NOT free to leave; thus Miranda warnings should have been given at that point. It was only after Ross made some incriminating statements that Miranda warnings were given. And even after the warnings were given, the officer downplayed their significance by making it seem as if the warnings were only a formality that the officer had to comply with.[31]
Seibert recognized that this type of “question-first” tactic is in direct conflict with the underlying purpose of the Miranda warnings. See Seibert, 542 U.S. at 611, 124 S.Ct. 2601. It is worth noting that both the interrogation here and the interrogation in McWatters took place before the Supreme Court issued its opinion in Seibert. However, if police continue to use these types of techniques in circumstances where it is clear that the focus of any investigation has turned to the defendant and Miranda warnings should be given, I fear that we will have more eases that will be reversed on appeal.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Although the defendant does not challenge his statement based on the invocation of his rights, there is also some question here as to whether or not the defendant invoked his right to silence after the reading of the warnings. When asked if he wished to waive the rights and talk with the officer, the defendant said, "I don’t — I can't tell you anything different.” However, the officer continued to talk with Ross, and Ross thereafter gave other incriminating statements.